

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00039-CR

Darrell Wayne **MOFFETT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B1779
Honorable Rex Emerson, Judge Presiding

No. 04-19-00040-CR

Teresa Jo **BRUFFETT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B1780
Honorable Rex Emerson, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: September 4, 2019

AFFIRMED

Darrell Wayne Moffett and Teresa Jo Bruffett were both convicted of possession with intent to deliver a controlled substance – methamphetamine. The same search warrant was used to seize the evidence used against both of them. On appeal, they challenge the trial court's denial of their motions to suppress, asserting the affidavit in support of the search warrant contained material omissions and did not establish probable cause. We affirm the trial court's judgments.

BACKGROUND

On September 27, 2016, Officer Jeff Purvis with the Kerrville Police Department prepared and signed an affidavit in support of a search warrant to search a house located at 2920 "A" Hunt Street, Kerrville, Kerr County, Texas. The affidavit described the house as the "suspected place and premise" and identified Bruffett, Danita Dee Horner, and other unknown persons as being in control of the house. Officer Purvis attested to the following events in his affidavit presented to the magistrate that are pertinent to this appeal:

> Within the last 72 hours, Affiant received information from a cooperating individual identified as Jessica Ray Bullard regarding drug sales to wit: methamphetamines and marijuana at suspected place and premise (2920 A Hunt Street, in Kerrville, Kerr County, TX). The CI had witnessed suspected parties, Teresa Jo Bruffett, Darrell (unknown), and Danita Dee Horner to be in possession of an unknown amount of methamphetamine at the suspected place and premise. The CI stated the CI had observed multiple small plastic baggies containing methamphetamine "ready to sale [sic]" next to a digital scale on a table in suspected place and premise. The CI stated the CI purchased a $20.00 dollar amount of methamphetamine from suspected party (Bruffett) at that time. The CI stated the CI observed another subject purchase a $20.00 dollar amount from suspected party at the same time. The CI stated suspected party's boyfriend (Darrell) would also sell methamphetamine to the CI at the suspected place and premise. The CI stated the CI had been purchasing methamphetamine ($20.00 dollar amounts) at a time for the last 4 to 5 months from suspected party at suspected place and premise. The CI stated Danita Horner is selling marijuana and psilocybin "mushrooms" from suspected place and premise. The CI stated the CI had purchased mushrooms from Horner in the past at suspected place and premise.
>
> Affiant is familiar with suspected party and had information suspected party was involved in the sales of methamphetamine. Affiant had received information in the past from a credible and reliable person that had provided information that lead to prosecutable narcotic cases. The CI advised the same above mentioned

information regarding suspected party's drug sales of methamphetamine at suspected place and premise.

At the hearing on the motions to suppress, defense counsel, who represented both Moffett and Bruffett, requested permission to question Officer Purvis on the basis that he omitted information from the affidavit or misstated the truth. The trial court allowed the questioning.

Officer Purvis admitted Bullard was an inmate at the Kerr County jail when she provided the information set forth in the affidavit. With regard to whether Officer Purvis routinely completed affidavits for search warrants solely based on information provided by inmates, Officer Purvis responded that he did if he named the inmate in the affidavit. Officer Purvis further stated he would need corroboration of the information only if he did not name the inmate. Although Officer Purvis did not believe he needed to include the information regarding the credible and reliable person he also referenced in the affidavit, he included the information because that person previously lived at the residence; however, he noted in the affidavit that the information was provided by the credible and reliable person "in the past." Officer Purvis disagreed the information was provided over a year before he prepared the affidavit but agreed it was several months earlier. Officer Purvis identified the credible and reliable person as Chana Ramirez, and stated she was working for the department when she lived at the residence.

Defense counsel also introduced into evidence affidavits signed by Moffett and Bruffett. The affidavits state Ramirez lived in their residence for two months before leaving on or about July 2015. The affidavits also state Ramirez did not 'set foot inside the residence" since that time.

At the conclusion of the hearing, the trial court took the matter under advisement and subsequently signed orders denying the motions to suppress. Moffett and Bruffett appeal.

**STANDARD OF REVIEW AND PROBABLE CAUSE DETERMINATION**

Both the Texas and United States Constitutions require a search warrant to be based on probable cause that evidence of an offense will be found through the execution of the search warrant. *Hyland v. State*, 574 S.W.3d 904, 910 (Tex. Crim. App. 2019). "Probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence pertaining to a crime will be found." *Id*. (internal quotation omitted). "In determining whether probable cause exists to support the issuance of a search warrant, the magistrate to whom the probable cause affidavit is presented is confined to considering the four corners of the search warrant affidavit, as well as to logical inferences the magistrate might draw based on the facts contained in the affidavit." *Id*. at 910-11. "The determination of whether probable cause exists is a 'totality of the circumstances' inquiry, based on the magistrate's reasonable reading of the affidavit, but the magistrate may not act as a mere 'rubber stamp.'" *Id*. at 911.

"Generally, a reviewing court applies a presumption of validity regarding a magistrate's determination that a search warrant affidavit supports a finding of probable cause." *Id*. As a result, this court must ordinarily review the magistrate's probable cause determination and decision to issue the warrant with great deference. *Id*. And, we "must uphold the magistrate's decision so long as the magistrate had a substantial basis for his finding." *Id*. (internal quotation omitted).

"But the presumption of validity regarding the magistrate's probable cause determination may be overcome if the defendant can show the presence of false statements in the search warrant affidavit that were either made deliberately or with reckless disregard for truth." *Id*. Similarly, this court has held the presumption of validity may also be overcome if the defendant can show the presence of material omissions in the search warrant affidavit that were made intentionally or with reckless disregard for the accuracy of the affidavit. *Gonzales v. State*, 481 S.W.3d 300, 311

(Tex. App.—San Antonio 2015, no pet.). If the defendant meets this burden by showing material omissions that were made intentionally or with reckless disregard, "the trial court [must] determine whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause for the defendant's arrest." *Id*. "If, after including the omitted material, the affidavit did not establish probable cause, then the search warrant would be voided and the fruits of the search excluded." *Id*. Under those circumstances, we would no longer defer to the magistrate's initial probable cause determination. *Hyland*, 574 S.W.3d at 911. Instead, the question on appeal "becomes the same as it would be for the magistrate conducting an initial review of a search warrant affidavit." *Id*. Therefore, under those circumstances, we review the search warrant affidavit with the omitted material to determine whether the affidavit established probable cause under a totality-of-the circumstances approach. *See id*.

## DISCUSSION

Both the appellants' briefs and the State's brief in these appeals focus on the *Gonzales* standard for reviewing search warrant affidavits when a defendant alleges the affidavit contains material omissions. The *Gonzales* analysis is not appropriate in this case, however, because of the very fact repeatedly stressed by Officer Purvis in his testimony. That is, although Bullard was an inmate and first-time informant, her name was included in the affidavit. Under those circumstances, the Texas Court of Criminal Appeals has held that "'when a probable cause affidavit *specifies a named informant* as supplying the information upon which probable cause is based, the affidavit is sufficient *if it is sufficiently detailed* to suggest *direct knowledge* on the informant's part.'" *See State v. Elrod*, 538 S.W.3d 551, 559 (Tex. Crim. App. 2017) (quoting *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995)) (emphasis in original).

In this case, the affidavit named Bullard as the informant and is sufficiently detailed to suggest direct knowledge on Bullard's part. *See id*. Bullard gave detailed information about the

manner in which the methamphetamine was packaged for sale and who was involved in the sales. Bullard further stated she had made purchases over a four to five month period. Thus, Bullard "was a named informant who was an eyewitness to criminal activity in which she was involved," and the magistrate "was able to assess [Bullard's] reliability based upon the details she provided." *Id*. at 558-59. "The magistrate, therefore, correctly determined that the facts [Bullard] gave established a 'fair probability' that evidence of a particular crime would likely be found" at the house listed in the affidavit. *Id*. at 560.

We note our analysis would not change even if the appellants made a showing that Officer Purvis omitted the fact that Bullard was an inmate with intentional or reckless disregard for the accuracy of the affidavit. Once Bullard was named in the affidavit, the review shifted to whether Bullard gave extensive and detailed information regarding an ongoing criminal activity that showed she had personal and direct knowledge of the information she provided. *Id*. at 559. Including the omitted fact that Bullard was an inmate in the affidavit does not change the analysis.

## CONCLUSION

Because the affidavit in the instant case named Bullard as the informant and was sufficiently detailed to show Bullard had direct knowledge of the matters she asserted, the magistrate could reasonably conclude under the totality of the circumstances that there was a fair probability that evidence of a crime would be found at the listed residence. Therefore, the trial court did not err in denying the motions to suppress, and we affirm the trial court's judgments.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH